I'll call the next case, case number 21-1040, Hall v. Allstate Fire. Looks like we're missing one. Yes, I'm sorry, I couldn't find it on my screen. I'm coming now. Thank you. Sorry. Mr. Levy. Thank you, Your Honors, and good morning and may it please the court and counsel Mr. Hunger. I represent Robert Hall on this lawsuit against Allstate with respect to uninsured motorist benefits, and our position we think is pretty simple. This is not about figuring out the facts but whether or not Allstate in fact presented sufficient evidence that emotion or summary judgment stage to allow the trial court to make the determinations that it did. And then whether or not the trial court then made some of its own factual findings, and even legal determinations, which under rules 56 F should have required the trial court to advise us and give us an opportunity to respond. But first thing I want to start off with here is that it is a big thing to take somebody's insurance away and that's what happened here with respect to the summary judgment. And I want to talk about the facts that we in fact know, and are undisputed were occurring we have a person here who is undisputedly through no fault of his own sustained bodily injuries in a car crash. After he had paid premiums to Allstate for uninsured motorist coverage. Allstate admitted that he was not liable Allstate admitted that he was entitled to recover at least $25,011 by sending. Mr hunger a check for $11. And so there's an admission here that he was injured that is liable the insurance that he was allowed to collect was insufficient. The public policy of Colorado is that uninsured motorist coverage is so important that it should not be diluted. And then we're going to take his insurance away, but he paid for every month for years, because his lawyer didn't return to phone calls and respond to three letters. That's that's a lot of non response isn't it. I'm sorry. That is a lot of non response by plaintiffs counsel, a jury could certainly make that determination, and that's the whole point of our argument here today is that these are jury questions because maybe it's a lot of response because the other thing that is absolutely undisputed in this case is there was nothing to respond to at that point. The only thing that was promised in the April 8 did did plaintiffs counsel at the time, tell Allstate that I will keep you informed I will keep you updated. I give you this first packet of bills but there's more to come and I will be providing. No, Your Honor, I'm going to say no because they did not make the promise to do all of that. What did he promise. I will continue to forward new records and bills as I received them for your review. That was the only promise that was made and that is that appellants appendix, page 91, and he invited communication, saying, if you require additional info, please let us know. Correct. And they did, they let him know they required some additional info. They asked for the status of treatment. We then required additional info. That's sort of very relevant in a personal injury case. The status of treatment. Yeah, yes, but what we do know the patient died. But what we do know here, and again it's undisputed that there was nothing else to report. There had been no receipt of any additional medical records. Was he under treatment was he under treatment. Apparently he had gone to a doctor. But, again, brain and behavior clinic he started treating with the brain and behavior clinic in June of 2019 these letters were between June and August of 2019. Correct. These were 30 days. How were they to know of that. How could they know without you telling them that he had started treating at the brain and behavior clinic and and your honor with all due respect I'm going to say and I'm going to say this a lot. So what. So all state didn't know that particular fact that did not impair their ability to continue to investigate the case. And this also kind of dovetails into our argument that the entire reliance on the what we call third party cooperation clause is ambiguous if the insurance company is allowed to say, you know, we want you to drive to Trinidad, and, and give us a statement even though you live in Aurora. That's a request. That's a request that may not be made but that requires there to be a reasonable request. So that's I think what you're suggesting here is what you suggested in your brief which is that g they could have sent a, they could have gotten a medical release. Well they did get a medical and they could have done their own investigation, they did eventually through the, through the litigation but how was it they were supposed to get a medical release when they sent that to the same council that wasn't responding or. Well that's a whole different request when the insurance company makes a request for medical release because that is a specific requirement of the insurance policy that most Council know. So we could assume that Council would respond to that request. Is that what we do. Well we can't presume that they wouldn't is what I'm going to say Your Honor, we can't just infer these facts. These may be an excellent defense for the actual defense of the case to be presented but as we set forth in our reply brief this case is not about what are the best practices for plaintiffs in responding to insurance companies, or what a lawyer should do. And then there's the whole question about whether or not the conduct of the lawyer can in fact be imputed to the client under a provision that requires forfeiture of the insurance policy for failing to return to phone calls and respond to three essential form letters asking for the status of treatment. When again it's undisputed there was nothing else to report. Now I want to talk about the fact questions that were sort of resolved here first of all I want to talk about how all states entire summary judgment is premised upon an allegation that plaintiff admitted that when he submitted his initial demand letter on April 8, he did not provide all state with all of his medical records, and that's just not factually accurate that's fact number 19 in support for their summary judgment motion. They cite the response to request for admission 13, which is Exhibit H to their motion for summary judgment at appellants appendix at 119, which he doesn't say I had records that I didn't provide he says I did not provide additional medical records and Bill says I did not yet received those records myself from the brain, brain and behavior clinic. So, that factually wasn't accurate about his obligation to respond. If it's true what you're saying is, gosh, there was nothing to say so we didn't have it there wasn't anything, anything, anything there to report. He has an obligation after saying, I'm going to have, I'm going to send you any continuing any anything I got any bills any any records. He has an obligation then, if there are none, and they're asking for them to say, I don't have any more, or I'm not aware of anymore. And your honor, I would say, I'm sorry, I apologize, I don't mean to be interrupting. That's all right, but that didn't happen either I mean, I know, but nor is there some obligation and ensure it is not required obligation to cooperate, that's what we're talking about here, cooperation would would require that you say, Oh, sorry, you sent me all these letters and you're asking me for more information, but I don't have any. Well, with all due respect, your honor, I would suggest that cooperation would require them to submit the bills and records that they promised to submit all state concedes that it's their obligation to do the investigation, it's their obligation to get the information, unless they are promised. Otherwise, now your honor I'm going to suggest there is no law in Colorado and the Colorado Supreme Court would not support a finding that simply that there is a requirement under every insurance policy to respond to every letter and to respond to every phone call. Suggested, but, but even if there were one. I'm sorry your honor go I apologize. So you say there's no requirement to respond to all letters or all communications. How about a response, and not just blow it all off. And you have a lawyer below where you in the original case. I was not. What and your honor. Again, the amount of practices. I'm, I'm not going to tell you that's best practices, but that does not result in a forfeiture of your property rights for your insurance policy, which requires intentional and deliberation which the trial court in fact found. So the other thing I want to point out here are the fact questions that the trial court came to that we think was inappropriate. First of all, it is undisputed that all information known before the suit or all documents and records which is the only thing that was provided or promised was provided all state says quote all state was unaware that Hall was not cooperating until the suit was filed, and that we think is at least a fact question, because all state had four months where they're claiming they didn't get responses to letters, and they should have done exactly what the insurance carrier did in the secrets case and sent out a notice and said we think this is a violation of your policy and reserving our rights to deny coverage which would have them given them. Does it matter here that council told all state, I will provide you with updates. Not for the technical legal is there a legal violation under Colorado law, showing a deliberate and intentional refusal to cooperate. So the plaintiff can just sort of hide out. Let things pass, have the bills mount up. Tell the insurance company will get back to you will get back to you. And they never do. And then bring suit and say, Hey, you need to pay us a whole bunch of money because I have these big medical bills. Does that seem right to you. It's not a violation of the contract. Now, you may say to cooperate is not in the contract. The duty to cooperate. Well, as we have argued, the duty to cooperate requires that providing a medical authorizations providing an examination under oath. None of the things that I'll say to ask for the duty to cooperate does not encompass and this is part of our brief it's a big the way it is it the way it is interpreted by all state that the duty to cooperate requires us to do anything that the insurance company decides it asks at any particular point is to are you saying the request by the insurance company were unreasonable. Well, I'm saying a jury could have found that the requests were unreasonable a jury could have found that the response was not unreasonable because there was nothing to report a reasonable jury or just a jury. Well, I'm going to say a reasonable jury slippery slope when we say that an insured loses all of their insurance benefits because a lawyer doesn't return a couple of phone calls or a few letters, but then what is the material prejudice. The material prejudice is just alleged and asserted to be well we had to defend a bad faith lawsuit not a contract lawsuit, not an unreasonable delay lawsuit but a bad faith lawsuit. Well that's reality isn't it isn't that reality. They did have to do that. And weren't they prejudiced by that. No. There are lots of reasons why people bring a lawsuit. What is the evidence as to why this lawsuit was brought in this case. And the answer is there is not. What is the evidence, last time I did this research all state was the number one defendant in bad faith lawsuits for cases had something like over 70. And in most of those claimed a failure to cooperate. Is that in our record. No, no. But how do we know that a bad faith lawsuit would not have occurred. Anyway, all state alleges that it is halls burden to prove mistake or inadvertence we disagree. But this is a finding that the trial court made that went again, something that would have required us to do all state makes the argument of counsel that the conduct was on this unmistakably intentional but there's not a single fact to support that as the court says that it was not a mistake. There is simply no evidence for that one way or the other. And when you're repeatedly asked, both by letter and telephone, and you get no response. Isn't there some whisper of intent to not respond. Well, if that were the case, and there may be some case law that could support that the trial court did not make that finding. And so for this summary judgment to be upheld the trial court would have had to have made these specific findings of fact but the trial court didn't talk about what might have occurred and what may have occurred. And if I may, I'd like to reserve the remainder of my time. Thank you. Thank you. Mr. May please the court. My name is Robert hunger and I represent all state in this matter. Your Honors, the material facts here are undisputed, and this case truly is an outlier that shows how easily this outcome could have been avoided. It is undisputed, as the court mentioned that counsel, sorry that all state called or wrote to counsel five times in an effort to investigate the claim. If counsel never picked up the phone, or otherwise responded. It is undisputed that plaintiff was receiving treatment medical treatment from the brain and behavior clinic and experienced wage loss during the relevant time period. If counsel did not disclose this information to all state. And it is undisputed that instead of responding to all state, instead of informing all state of plaintiffs medical treatment or wage loss. And instead of simply telling all state to acquire the information on its own council instead opted to sue all state for bad faith. Now, to be sure, cooperating with an investigation is not burdensome. And here, had counsel simply told all state about Mr. Hall's treatment at the brain and behavior clinic and had counsel simply told all state that Mr. Hall had or potentially had a wage loss claim, we would not be here today. The presence of additional medical treatment and the existence of a wage loss claim would have only served to increase the value of plaintiff Mr Hall's claim. So there is absolutely no reason not to have disclosed this. And as the Colorado Supreme Court said in State Farm versus Brecky, if the insured cooperates, it will provide quote extensive information, quote, that allows the insurance company to investigate and evaluate the claim. And as Judge Domenico recognized below in granting summary judgments, if cooperation means anything, it means returning phone calls. And, Your Honors, there are, if I have time, there are five points that I would like to specifically address today. One, the prejudice that all states sustained. Two, the impact of Cravari versus Allstate. Three, the authorization issue. Four, the suggestion that there was no additional information to provide. And five, the intent or the alleged sua sponte nature of Judge Domenico's order. On the first point, I think it is important to specify that prejudice here is not just limited to counsel pre-litigation conduct, but rather it is a combination of the promise to provide information, the refusal to communicate with Allstate despite Allstate's multiple overtures, the nondisclosure of medical treatment and wage loss information, and the filing of the bad faith lawsuit. And so in this light, the prejudice arises because counsel prevented Allstate from completing a reasonable investigation and then sued Allstate for bad faith for failing to complete. Yes, Your Honor. When you have opposing counsel acting as this counsel was acting, didn't it become apparent to Allstate that they were getting nothing from this guy? And they, if they were going to protect their own interests, they needed to seek medical information. Because there might be something going on here and they might have to pay a lot of money if they don't find out what's going on. Yes, Your Honor, I believe in the first instance Allstate was justified in relying on counsel's representation that additional records and expenses would be provided. Yeah, that's that's said initially, but then you have all this non-activity on plaintiff's part after that. Yes, Your Honor, and I think that you may be getting to the question of whether a wage loss authorization should have been requested. And the problem there is that during this relevant timeframe, I believe it's from June to August of 2019, Allstate was completely unaware that Mr. Hall was treating at the brain and behavior clinic. So even if it had previously acquired a medical records authorization, it would have had absolutely no idea where to send it because it didn't know for purposes of this claim that the brain and behavior clinic even existed. And similarly on the wage loss issue, there would have been simply no reason for Allstate to have requested a wage loss authorization. Because counsel at no point informed Allstate or even suggested that there was a wage loss claim at issue. And on the prejudice issue, I believe that counsel's non-cooperation here is precisely what caused the lawsuit. Plaintiff alleges that Allstate, in bad faith, failed to properly investigate his medical expenses and wage loss. But counsel's conduct was what prevented Allstate from properly investigating the medical expenses and wage loss in the first place. And so in other words, counsel's conduct really placed Allstate in the untenable position of denying coverage or paying the claim without the means to investigate its validity. And I believe this prejudice has been recognized by a number of courts in the past, which included a panel of this court in Cravari v. Allstate, the Colorado Court of Appeals in Windhorse v. State Farm, and an August 2021 decision from the District of Kansas, which is Hall-Lopez v. State Farm. The site there is 2021 Westlaw 3602601, which held that under Cravari, prejudice exists where a failure to cooperate forces an insurance company to defend a bad faith suit. And contrary to the statements or arguments that plaintiff made in the briefs, the existence of a lawsuit in and of itself, I don't believe is necessarily evidence of sufficient prejudice. So when there's only a claim for benefits, and there's no bad faith or statutory claim, there's no prejudice there. And similarly, I don't believe there would be sufficient prejudice when there is a bad faith claim, but the bad faith claim is not caused by the non-cooperation. So, for example, in a UIM claim, if an insured refuses to produce or authorize wage loss information, for example, that in and of itself could be evidence of the first element of the defense, the non-cooperation. However, if in the ensuing lawsuit, the insured does not claim that the insurance company in bad faith failed to investigate the wage loss claim, there, because the wage loss information, wage loss investigation is not part of the bad faith claim, the non-cooperation did not cause the bad faith suit. But that's simply not what happened here, as I mentioned earlier. So, part of the allegation here is a bad faith claim, is that right? Yes, Your Honor, there is a claim for the underlying benefits, there is a bad faith claim, and there is a statutory unreasonable delayed denial. So when you're talking about bad faith, it's plaintiff's claim that the insurance company acted in bad faith. Yes, Your Honor. Okay, and you're saying non-cooperation has nothing to do with that? I'm saying that when there is non-cooperation that results in a lawsuit that includes a bad faith claim, that is evidence of sufficient prejudice on behalf of the insurance company. So it's the second element of the failure to cooperate defense. Counsel, when did Allstate raise the lack of cooperation, before the lawsuit was filed or afterwards? Your Honor, Allstate first raised the defense of non-cooperation in its answer and affirmative defenses after the lawsuit was filed. And that was because the prejudice really didn't completely manifest or wasn't perfected until the lawsuit was filed. Then on my second point on Cravari, I am acutely aware that this court is likely rather familiar with the Cravari decision. So I will do my best to avoid a long-winded recitation of the matter. But I do feel that it is important to note that in Cravari, a panel of this court did make a few holdings as a matter of law. And that's one, prejudice exists if a failure to cooperate causes the insurance company to have to defend a bad faith lawsuit. And two, an insured cannot hear any prejudice after initiating a bad faith lawsuit. And in his reply, plaintiff claims that Cravari was wrong on the law and simply doesn't apply here. But I don't believe that either of those statements are true, as Cravari correctly interpreted Colorado law, including by referencing Windhorse v. State Farm. And moreover, if anything, the case of Barr really presents a more extreme case of non-cooperation and prejudice than Cravari. And that's because in Cravari, there was this ongoing back and forth between counsel and the insurer. And the insurer argued that while counsel provided some of the requested information, counsel withheld other information. And so the Cravari plaintiff could argue that she broadly did cooperate with the insurer's investigation. And counsel there retained experts to calculate the plaintiff's wage loss and future surgery costs before litigation. And so the insurance company knew that the plaintiff had a wage loss claim and may need surgery, but didn't have this particular calculation or these particular calculations. But here in the case of Barr, there really was no cooperation whatsoever as counsel literally refused to engage with Allstate. And so while the Cravari insurer knew that the insured was forwarding a wage loss claim, but experienced difficulties in obtaining specific wage loss information, here Allstate didn't even know that a wage loss claim was on the table. And that's because counsel never disclosed this information to Allstate and refused to discuss the claim with Allstate. And while the Cravari insurer knew that the insured may need future surgery, but did not know how much the surgery would cost, here, because of counsel's conduct, Allstate didn't even know that Mr. Hall was treating at the brain and behavior clinic. And so here there was no back and forth like there was in Cravari. And because of counsel's conduct, Allstate really wasn't even able to get past square one. Another point I'd like to address is that in the briefs and earlier today, plaintiff has asserted that before filing the lawsuit, counsel had no additional information to provide before the lawsuit was filed. And I just believe that this was demonstrably inaccurate. That's because it is undisputed that plaintiff was treating at the brain and behavior clinic during this relevant time period, and that counsel had not previously told Allstate about the clinic. This is in the record at Appellant's Appendix pages 111 and pages 215 through 216. It is also undisputed that plaintiff sustained wage loss at the end of 2018 and beginning of 2019, but counsel never told Allstate about this potential wage loss. And this is in the record at Appellant's Appendix pages 82 through 83, 126, 141, 364 to 365. And it is also in Allstate's appellate brief at pages 25 through 27. And this argument is from a broader perspective, I think, really missing the forest for the trees. That's because the failure to cooperate here is not limited to the failure to produce a specific document, but rather the non-cooperation and prejudice is a combination of the refusal to discuss the claim with Allstate, the nondisclosure of plaintiff's medical treatment and wage loss claim, and the bad faith lawsuit. Could you address, while you still have some time, his argument about whether or not Allstate had to show that he refused to cooperate in bad faith and he relies on the congress, I'm not sure I'm pronouncing that correctly, and secret cases on that. There's some language in there that he's relying on. Yeah, I'd be happy to, Your Honor. I believe that plaintiff is incorrect on the law here. And that's because, initially, I believe plaintiff does have the burden. As the Knugras case, I don't know if I'm pronouncing that correctly, from the 1940s, it refers to a failure to cooperate being potentially excused if the insured did not act intentionally and did not act in bad faith. And so I believe by using the phrase excused, the court assumes that the non-cooperation was proved in the first instance. So the lack of a mistake or the intent issue would be something that the plaintiff or the insured would have to demonstrate. And in the brief, plaintiff references State Farm versus Sechrist or Sechrist. But Sechrist, I don't believe, suggests that it is the insurer's burden to make this demonstration. And just on the substance of the matter, given the undisputed facts, Your Honor, really only one reasonable inference can be drawn here. That's that counsel's conduct was not the result of a mere mistake. No, counsel did not respond to five- Was it bad faith? Your Honor, I don't believe that it is necessary for all State to demonstrate that the plaintiff acted in bad faith. And I don't believe that plaintiff showing a lack of that faith would salvage the claim. I believe the issue is whether it was the result of a mistake or whether it was intentional. And counsel did not respond to five phone calls and letters, did not provide all State with information about plaintiff's treatment, and did not provide all State with information about plaintiff's wage loss. Instead, he sued all State for bad faith. And just very briefly, I don't believe that Judge Domenico issued a sua sponte order because the intent was directly addressed in all State's opening brief and the briefings below. Thank you very much, Your Honor. Thank you, counsel. Thank you. Maybe there was clerical errors. There just was not a determination. All State didn't even reference any deliberate and intentional conduct and bad faith conduct as Judge Domenico did. Counsel, before you filed the bad faith lawsuit, did you contact all State and discuss the situation with them? No, sir. You just filed a suit? Yes, sir. Thank you. This appears to be the offending act here that all State is complaining of. Well, yeah. Are you surprised at that? Well, Your Honor, I don't take this as a good sign for me. You're all lawyers. You've got to pony up to the bar and tell us what really happened. Every citizen is allowed to bring a lawsuit. You guys set all State up, it looks like. Well, that allegation wasn't made and there's been no finding of that. And I also want to point out that the court did not find there was insufficient evidence for bad faith. The court just found there was this failure to cooperate. Lack of cooperation. Correct. But the court did not enter an order. The all State policy itself at Appellant's Appendix 245, I'm sorry, 256, says that if there's no agreement on what to do with uninsured motorists, you must bring a lawsuit. It is what I'm saying. It's contemplated by the contract. The all State contract says if you don't like what we're offering, you must bring a lawsuit. So this idea that a lawsuit is... Don't bother to call us and tell us. Is there a legal requirement under the law that we have to tell you who we're going to go see next week, what we're going to do? And folks, I have to apologize, but Cabarri is so distinguishable as is Windhorse. They're both unpublished opinions. And I just want to make sure to get that out there, because in Cabarri, the allegation was there was a specific request and a specific promise by the lawyer. Yes, I will. You don't practice in Mexico. Counselor, you have time? I apologize. I didn't hear that last, but my time is up. Thank you all for your time this morning. Thank you, Counselor. Thanks. Thanks to both of you. We appreciate your arguments. They've been helpful. And we will submit the case, and Counselor excused. Thank you, Your Honor. Thank you.